UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
REED CONSTRUCTION DATA INC.,     :   09 Civ. 8578 (RWS)

                    Plaintiff,                     :

         - v. -                                  :

THE MCGRAW-HILL COMPANIES, INC.,
JOHN DOES One through Five, and        :
JOHN DOE ENTITIES One through Five,

                                       :
                Defendants.
-------------------------------------------------------------------

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT THE MCGRAW-HILL COMPANIES, INC.'S MOTION TO DISMISS COUNTS THREE, FIVE, SIX, SEVEN AND EIGHT OF THE AMENDED COMPLAINT**

PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Defendant The McGraw-Hill Companies, Inc.*

OF COUNSEL:
   Saul B. Shapiro
   Joshua A. Goldberg

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................1

POINT I:     RCD'S RICO CLAIMS MUST BE DISMISSED ......................................................1
A.     RCD Has Not Alleged Distinctness ..............................................................................1
B.     RCD Has Not Alleged Proximate Cause ......................................................................9

POINT II:    RCD CANNOT BRING A MISAPPROPRIATION
             CLAIM BASED ON THE CONTRACTUAL RELATIONSHIP
             ALLEGED IN THE AMENDED COMPLAINT .....................................................10

POINT III:   RCD HAS NOT MET THE PARTICULARITY REQUIREMENTS
             FOR A TORTIOUS INTERFERENCE WITH PROSPECTIVE
             ECONOMIC ADVANTAGE CLAIM ......................................................................11

POINT IV:    RCD FAILS TO STATE A CLAIM UNDER NEW YORK GBL § 349 ................13

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................................. 13

*Carvel Corp. v. Noonan*,
   350 F.3d 6 (2d Cir. 2003) ............................................................................................ 11

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001) ................................................................................................... 5, 6

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ........................................................................................ 10

*City of New York v. Cyco.net, Inc.*,
   383 F. Supp. 2d 526 (S.D.N.Y. 2005) .......................................................................... 6

*City of New York v. Smokes-Spirits.com, Inc.*,
   541 F.3d 425 (2d Cir. 2008) .......................................................................................... 3

*Construction Tech. v. Lockformer Co.*,
   704 F. Supp. 1212 (S.D.N.Y. 1989) ............................................................................ 15

*Diario El Pais, S.L. v. The Nielsen Co.*,
   2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) ............................................................... 12

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) .......................................................................................... 8

*G-I Holdings, Inc. v. Baron & Budd*,
   238 F. Supp. 2d 521 (S.D.N.Y. 2002) .......................................................................... 4

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
   277 F. Supp. 2d 269, 275 (S.D.N.Y. 2003) ................................................................ 15

*Hecht v. Commerce Clearing House*,
   897 F.2d 21 (2d Cir. 1990) ............................................................................................ 8

*Hemi Group, LLC v. City of New York*,
   130 S. Ct. 983 (2010) ................................................................................................ 3, 9

*Henneberry v. Sumitomo Corp. of Am.*,
   532 F. Supp. 2d 523 (S.D.N.Y. 2007) ........................................................................ 12

*Jim Mazz Auto, Inc. v. Progressive Cas. Ins.*,
   2009 WL 910969 (W.D.N.Y. Mar. 31, 2009)..................................................................12

*Johnson & Johnson v. Am. Nat'l Red Cross*,
   528 F. Supp. 2d 462 (S.D.N.Y. 2008).............................................................................12

*Kaleida Health v. Medtronic Sofamor Dankes USA*,
   2006 U.S. Dist. LEXIS 92295 (W.D.N.Y. Dec. 21, 2006)..............................................11

*Kforce, Inc. v. Alden Personnel, Inc.*,
   288 F. Supp. 2d 513 (S.D.N.Y. 2003)........................................................................14, 15

*Krepps v. Reiner*,
   588 F. Supp. 2d 471 (S.D.N.Y. 2008).............................................................................13

*Laverpool v. New York City Transit Auth.*,
   760 F. Supp. 1046 (E.D.N.Y. 1991) .................................................................................8

*Masefield AG v. Colonial Oil Indus.*,
   2006 WL 346178 (S.D.N.Y. Feb. 15, 2006)...................................................................12

*Mayfield v. Gen. Elec. Capital Corp.*,
   1999 WL 182586 (S.D.N.Y. Mar. 31, 1999) ................................................................4, 7

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999)..............................................................................................9

*In re Parmalat Secs. Litig.*,
   479 F. Supp. 2d 332 (S.D.N.Y. 2007)...............................................................................7

*Proctor & Gamble Co. v. Big Apple Indus. Bldgs.*,
   879 F.2d 10 (2d Cir. 1989)............................................................................................3, 4

*Productivity Software Int'l, v. Healthcare Tech.*,
   1995 WL 437526 (S.D.N.Y. Jul. 25, 1995) ....................................................................10

*R.C.M. Exec. Gallery Corp. v. Rols Capital Co.*,
   901 F. Supp. 630 (S.D.N.Y. 1995) ...................................................................................7

*Rich v. New York Cent. & Hudson River R.R.*,
   87 N.Y. 382 (1882) .........................................................................................................11

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994)....................................................................................... passim

*Seat Sack, Inc. v. Childcraft Educ. Corp.*,
    2010 WL 245576 (S.D.N.Y. Jan. 22, 2010) ..................................................................15

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256 (2d Cir. 1995)..............................................................................4, 14, 15

*Shen v. Signature Dev. Corp.*,
    2009 NY Slip OP 52627U (N.Y. Sup. Ct. Dec. 29, 2009) ...........................................11

*Stolow v. Greg Manning Auctions Inc.*,
    258 F. Supp. 2d 236 (S.D.N.Y. 2003)............................................................................6

*Sudler v. City of New York*,
    2010 WL 68095 (S.D.N.Y. Jan. 8, 2010) ..............................................................11, 12

*Trautz v. Weisman*,
    809 F. Supp. 239 (S.D.N.Y. 1992) ................................................................................8

*United States v. Turkette*,
    452 U.S. 576 (1981).......................................................................................................8

Defendant The McGraw-Hill Companies, Inc. ("McGraw-Hill") respectfully submits this reply memorandum of law in further support of its motion to dismiss Counts Three, Five, Six, Seven and Eight of Plaintiff Reed Construction Data Inc.'s ("RCD's") Amended Complaint. For all the reasons stated, the Court should grant McGraw-Hill's motion in full.

## PRELIMINARY STATEMENT

This is a commercial dispute between two sophisticated competitors. It is not a case about organized crime syndicates, consumer fraud, or a pattern of racketeering activity. Notwithstanding RCD's overwrought and inflammatory rhetoric in its opposition brief, RCD's claims still suffer from the same legal deficiencies they did when McGraw-Hill moved to dismiss RCD's original Complaint. RCD still has not properly alleged "distinctness" or proximate cause, so its RICO claims (Counts Seven and Eight) must be dismissed. It still has not identified a duty outside of the alleged contractual relationship identified in the Amended Complaint, so its misappropriation of confidential information claim (Count Three) must be dismissed. It still has not plausibly alleged interference with any particular prospective business relationship, so its tortious interference claim (Count Five) must be dismissed. And it still has not shown that the gravamen of its Amended Complaint is injury to consumers—as opposed to injury to itself—so its claim under New York GBL Section 349 (Count Six) must be dismissed.

## ARGUMENT

### POINT I

### RCD'S RICO CLAIMS MUST BE DISMISSED

**A.     RCD Has Not Alleged Distinctness**

The first sentence of paragraph 1 of RCD's Amended Complaint alleges that this case involves allegations of misconduct "committed by *a* sophisticated corporate entity." Am. Compl. ¶ 1 (emphasis added). RCD identifies one named defendant, McGraw-Hill, in the

Amended Complaint. Throughout the Amended Complaint, and in its opposition papers, RCD discusses alleged misconduct by McGraw-Hill Construction ("Dodge"), a division of McGraw-Hill. *See id.* ¶¶ 1, 34, 106. To be sure, RCD alleges that Dodge enlisted others—almost all of whom are expressly described as "agents" in the pleadings—to facilitate the alleged misconduct. *See id.* ¶¶ 3, 4, 88, 142, 166, 181, 195, 259, 294. But at all times and in all respects, the gravamen of RCD's case is that Dodge itself engaged in tortious conduct for the sole purpose of benefiting Dodge at RCD's expense. *See id.* ¶¶ 1, 34, 106-134. This is not a case in which several independent entities allegedly got together to form an enterprise for the purpose of advancing the enterprise's interest. Rather, this is a case in which RCD alleges that Dodge set out to harm a competitor and then enlisted its agents to act on Dodge's behalf.

Notwithstanding these facts, when RCD turns to the RICO claims in the Amended Complaint, RCD suddenly alleges that Dodge was, in fact, part of a racketeering "enterprise." As McGraw-Hill has previously explained, the problem with this alleged "enterprise" is that it is nothing more than Dodge and its agents. As RCD alleges in the Amended Complaint, "***[t]he actions of Dodge and its agents are at issue in this case.***" *Id.* ¶ 3 (emphasis added). None of the other entities or individuals is alleged to have participated in the alleged misconduct other than as agents of Dodge. Indeed, there is no factual basis to allege that the "enterprise" was independent in any legal sense from Dodge, or that any of the so-called members of the alleged "enterprise" acted for the benefit of the "enterprise," or that the "enterprise" itself benefited from any of the alleged misconduct. This is not a case where independent "persons" created an enterprise to achieve an unlawful objective on behalf of the enterprise, or where an organized crime syndicate infiltrated a legitimate business to carry out its own independent criminal purpose. For this reason, as McGraw-Hill argued in its moving brief, RCD's allegations fail to

2

state a claim under RICO. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (discussing distinctness rule); Br. at 11-19.

In response to McGraw-Hill's arguments, RCD argues that it has alleged that Dodge "associated with a number of other legally distinct corporations and individuals to *form a distinct enterprise*." Opp. Br. at 19 (emphasis added). But nowhere in the pleadings does RCD allege that the "enterprise" was distinct from Dodge such that it had an independent identity or purpose. On the contrary, RCD alleges that the "enterprise" was merely Dodge and others acting as agents at Dodge's direction for Dodge's benefit. RCD may be right that *Riverwoods* does not apply to situations where a corporation and its third-party agents act "on behalf of an *independent* enterprise," *id.* at 23 (emphasis added), but that does not describe the allegations in this case, where the alleged co-conspirators are alleged to have acted for the sole benefit of Dodge, not on behalf of an "independent enterprise." *See* Am. Compl. ¶ 1 ("***Dodge*** has used its unauthorized access to RCD's confidential and trade secret information to compete unfairly with RCD . . . in an apparent attempt to force RCD out of business and obtain a monopoly over the construction data industry." (emphasis added)); ¶ 34 ("***Dodge*** has been using its access to Reed Connect to compete unfairly with RCD" (emphasis added)).

For this reason, RCD's reliance on *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 448 (2d Cir. 2008),[1] is misplaced. *See* Opp. Br. at 20-21. In *Smokes-Spirits*, the plaintiff alleged that the enterprise was distinct from the defendants because it was, in fact, an "innocent corporation, with its own legal basis for existing." *Id.* Permitting the plaintiff to proceed was consistent with RICO's purpose of preventing organized crime syndicates from infiltrating legitimate businesses and using those businesses to conduct its criminal affairs. *See*

---

[1] RCD fails to mention that the Supreme Court reversed *Smokes-Spirits* on January 25, 2010, more than a month before RCD filed its brief. *See Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010).

3

*Proctor & Gamble Co. v. Big Apple Indus. Bldgs.*, 879 F.2d 10, 14 (2d Cir. 1989) (RICO was enacted "to combat the infiltration into and corruption of America's legitimate business community by organized crime") (citing Pub. L. No. 91-452, 84 Stat. 941, 943 (1970)). That is not the case here, where RCD alleges that McGraw-Hill itself, through Dodge, engineered and engaged in the alleged misconduct.

Equally misplaced is RCD's reliance on *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 546 (S.D.N.Y. 2002) (Sweet, J.), *see* Opp. Br. at 23-24, where the plaintiff alleged that the defendant had conspired with others, including multiple law firms, trade unions, and doctors to form an enterprise for the purpose of bringing fraudulent asbestos actions against the plaintiff. *G-I Holdings*, 238 F. Supp. 2d at 546. While the defendant directed the enterprise activities, each of the other independent entities played a specific role in the alleged racketeering conduct with the goal of encouraging large settlements "for their own benefit through the device of the enterprise." *Id.* at 546-47. The enterprise itself was independent of the named law firm, and the participants in the enterprise went "beyond conducting the normal affairs" of the law firm. *Id.* at 547. In other words, the enterprise was created for the purpose of conducting the scheme, and each of the independent participants stood to gain through the enterprise (not through payments by the defendant, as alleged here). No such facts exist in this case.[2]

RCD also argues, erroneously, that the distinctness rule is satisfied whenever the plaintiff alleges that the enterprise consists of more than one legally distinct entity. *See* Opp. Br.

---

[2] In *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263 (2d Cir. 1995), *see* Opp. Br. at 21-22, the enterprise was made up of two separate and distinct corporations and an individual associated with each corporation who had joined together to create an enterprise for the purpose of defaming the plaintiff. Each member of the enterprise was "an independent entity that could benefit from his nefarious activities" through the enterprise. *Securitron*, 65 F.3d at 263. As another Court noted in distinguishing *Securitron* and dismissing a RICO claim for lack of distinctness, in *Securitron* "there was no agency relationship between the participants in the execution of" the enterprise's activities. *Mayfield v. Gen. Elec. Capital Corp.*, 1999 WL 182586, at *8 (S.D.N.Y. Mar. 31, 1999). In contrast, here each of the alleged co-conspirators allegedly acted as Dodge's agent in carrying out Dodge's regular business activities.

at 19-21. RCD interprets this to mean that a plaintiff may proceed on a RICO claim whenever the alleged enterprise includes two or more legally independent persons or entities. *Id.* This is not the law, *see Riverwoods*, 30 F.3d at 343-44, and if it were the law it would render the distinctness rule meaningless. Indeed, since a corporation can act only through its agents, and every individual, whether an agent or not, is a legally "distinct" person, a corporation would always meet the distinctness rule under RCD's interpretation.

To buttress its argument, RCD distorts the Supreme Court's holding in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001). *See* Opp. Br. at 20. According to RCD, *Kushner* stands for the proposition that a plaintiff can establish distinctness in any case in which an enterprise involves both a corporation and a corporate officer, because "the two are legally distinct." Opp. Br. at 20. This is not the law, as *Kushner* makes clear. In *Kushner*, the Supreme Court acknowledged the distinctness rule, as set forth in the Second Circuit's decision in *Riverwoods*, 30 F.3d at 344-45, but held that it did not bar a claim where the defendant was an *individual* (as opposed to a corporation). *See Kushner*, 533 U.S. at 163. The Court reasoned that an individual who "conducts the affairs of a corporation through illegal acts comes within the terms of" the RICO statute, because such an individual is considered to be legally separate from the corporation (enterprise) itself. *Id.* The reverse is not true, however, because a corporation is made up of its employees and agents. Therefore, where, as here, the corporation is the defendant, a plaintiff cannot avoid the distinctness rule merely by pointing out that the corporation's agents are independent legal entities. The Court in *Kushner* expressly acknowledged the *Riverwoods* rule, noting that *Riverwoods* "concerned a claim that a corporation was the 'person' and the corporation, together with all its employees and agents, were the 'enterprise.'" *Id.* at 164. Based on this distinction, *Riverwoods* continues to be binding

precedent, and courts in this District have continued to apply *Riverwoods* to cases, such as this one, in which the defendant is a corporation. *See, e.g., City of New York v. Cyco.net, Inc.*, 383 F. Supp. 2d 526, 548 (S.D.N.Y. 2005) (applying *Riverwoods* to dismiss claim based on lack of distinctness where defendant was corporation, and enterprise was made up of corporation and its officers and employees; noting that plaintiff's reliance on *Kushner* was "misplaced"); *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 247 (S.D.N.Y. 2003), *aff'd*, 80 Fed. Appx. 722 (2d Cir. Nov. 17, 2003) (continuing to apply *Riverwoods* after *Kushner*, but finding that plaintiffs met test because enterprise was more than corporation and its employees or agents).

For this reason, RCD's argument that it satisfies the distinctness rule because NE14T (a Lorenz-associated entity) and Roper allegedly are separate corporations, and Lewin and Lorenz "are natural persons," Opp. Br. at 20-21, misses the point. The question is not whether they are independent legal entities, but whether they are distinct from Dodge for purposes of RICO. Based on RCD's own allegations, none of these entities/persons are distinct because their involvement in the purported "enterprise" was limited to their agency relationships with Dodge.

RCD also attempts to avoid the distinctness rule by arguing that third-parties are considered agents under *Riverwoods* only if they are conducting the "regular affairs" of the corporation. This is a misguided and long-rejected attempt to twist the language in *Riverwoods*. Opp. Br. at 22-24. *Riverwoods* does refer to agents "carrying on the regular affairs of the defendant," *Riverwoods*, 30 F.3d at 344, but this language does not mean that the distinctness rule only applies to lawful conduct or conduct officially sanctioned by the corporation. Indeed, *Riverwoods* itself involved allegations of unlawful conduct by the corporation and its agents, as must every case in which a plaintiff alleges a violation of RICO. The standard proposed by RCD

would eviscerate *Riverwoods*, and courts in this District long ago expressly rejected RCD's argument for this very reason. For example, in *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 901 F. Supp. 630, 640-41 (S.D.N.Y. 1995), Judge Koeltl dismissed RICO claims for lack of distinctness, where the plaintiffs relied on "the fact that the actions of the defendants allegedly violated RICO to distinguish the activities of the enterprise from the regular activities of the defendants." In rejecting the same argument that RCD makes here, Judge Koeltl noted that "an alleged association-in-fact does not have an existence apart from the [corporation] merely because the alleged racketeering activities are not legitimate [corporate] activities." *Id.* at 641. (citing *Langley v. Am. Bank of Wisconsin*, 738 F. Supp. 1232, 1241 (E.D. Wis. 1990)).[3]

Likewise, here RCD alleges that Dodge competed with RCD for customers in the normal course of its business and that its regular activities included, among other things, compiling data and updating its database, creating comparisons between the parties' databases, publishing those comparisons through the Roper Report, and using the comparisons to solicit customers. *See* Am. Compl. ¶¶ 24, 107-129, 136-39. This is precisely what the Second Circuit referred to in *Riverwoods* when it observed that the alleged racketeering activity was the defendant's "regular way of conducting" its business. *See Riverwoods*, 30 F.3d at 345 ("[plaintiff] cannot seriously contend that the actions of [the enterprise] were anything other than activities of [its corporate member's employees] carrying out the business of [the corporation]").

Finally, RCD's conclusory allegations regarding Roper do not change the analysis. As McGraw-Hill noted in its opening papers, Roper was added to the alleged "enterprise," only *after* McGraw-Hill moved to dismiss RCD's original Complaint. RCD's

---

[3] *See also In re Parmalat Secs. Litig.* 479. F. Supp. 2d 332, 347 (S.D.N.Y. 2007) (enterprise is indistinct from corporation itself if purpose of enterprise is to benefit corporate member); *Mayfield*, 1999 WL 182586, at *8 (dismissing RICO claim for lack of distinctness where alleged racketeering acts stemmed from regular business practices of corporation).

factual allegations about Roper did not change from the original to the Amended Complaint, and RCD has not alleged any facts on which to show that Roper was either an independent participant in the "enterprise" or a knowing and intentional participant in the alleged scheme. RCD admits as much in its opposition papers asserting—without reference to factual allegations in the Amended Complaint—that Roper "knew *or should have known*" that Dodge's comparisons were created based on unauthorized access to Reed Connect and that such comparisons were being used to harm RCD in the marketplace. Opp. Br. at 20, n. 19 (emphasis added). Even if these conclusory allegations were true—or were included in the Amended Complaint—they would not make Roper a participant in the charged enterprise, because a party cannot be considered part of a RICO enterprise unless it intended to join the enterprise for the purpose of engaging in a particular fraudulent course of conduct to achieve on an unlawful purpose. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004); *see also United States v. Turkette*, 452 U.S. 576, 583 (1981) (distinctness cannot be shown simply by tacking on entities to enterprise that do not in fact operate as "continuing unit" or share "common purpose"). As the Second Circuit has held, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House*, 897 F.2d 21, 25 (2d Cir. 1990); *see also Trautz v. Weisman*, 809 F. Supp. 239, 246 (S.D.N.Y. 1992) (at the very least, plaintiff must allege facts to show actual knowing participation); *Laverpool v. New York City Transit Auth.*, 760 F. Supp. 1046, 1060 (E.D.N.Y. 1991) ("Bare or conclusory allegations of participation . . . will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud.") (citations omitted).

For all of these reasons, RCD's allegations fail the distinctness test.

**B.     RCD Has Not Alleged Proximate Cause**

The Supreme Court recently confirmed that the RICO proximate cause analysis requires a plaintiff to allege a *direct* link between the alleged racketeering acts and the alleged injury. *Hemi Group*, 130 S.Ct. at 989-90. As McGraw-Hill pointed out in its moving papers, RCD cannot make this showing because its causation theory requires the court to follow a lengthy and tortuous path. *See* Br. at 19-22. Where, as here, a "theory of causation requires [a court] to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement." *Hemi Group,* 130 S.Ct. at 989.

In response to McGraw-Hill's arguments, RCD points in large part to a new category of racketeering acts that was added to the Amended Complaint to address the proximate cause deficiency. *See* Opp. Br. at 28-29. This category relates to three instances in which Dodge allegedly e-mailed two misleading documents that referred to the Roper Report comparisons to customers. *See* Am. Compl. ¶ 259(f)(i)-(iii). According to RCD, one of these documents, entitled "Project News and Intelligence: Data and Support for Informed Decision-Making" (the "Project News Document"), contained "misrepresentations that [Dodge] legitimately obtains all of the project information in its database." Opp. Br. at 28, n. 46 (citing Am. Compl. ¶ 259(f)). But RCD fails in the Amended Complaint to specify the "particulars as to the respect in which plaintiffs contend the statements were fraudulent," *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999), in that it does not explain how the Roper Report comparisons, which Reed *admits* were simply statements of the number of projects available on a state by state basis, Am. Compl. ¶ 114, were false or misleading. Moreover, RCD's allegation that the Project News Document contained fraudulent misrepresentations that "Dodge legitimately obtains all of the

project information in its database" is itself false. Am. Compl. ¶ 259(f).  The Project News Document, attached hereto as Exhibit A, contains no such representation.[4]

## POINT II

## RCD CANNOT BRING A MISAPPROPRIATION CLAIM BASED ON THE CONTRACTUAL RELATIONSHIP ALLEGED IN THE AMENDED COMPLAINT

RCD's misappropriation of confidential information claim (Count Three) rests on a theory that "Dodge's unauthorized access to [RCD's] confidential information was in breach of RCD's confidential relationship with Lorenz and Lewin." Am. Compl. ¶ 184. According to the Amended Complaint, that relationship derived from the subscription agreements that Lorenz and Lewin allegedly signed with RCD. *Id.* ¶ 181-82. As McGraw-Hill has explained, RCD's theory is deficient as a matter of law, because a plaintiff cannot base a misappropriation claim on a contractual relationship since that would be duplicative of a contract claim. *See* Br. at 23 (citing *Productivity Software Int'l, v. Healthcare Tech. Inc.*, 1995 WL 437526, at *8 (S.D.N.Y. Jul. 25, 1995)) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)).

In response to McGraw-Hill's motion, RCD does not dispute this law or contest that its theory, as pled, is legally deficient. Instead, RCD tries to distract the Court by citing to cases and making arguments that go beyond what is alleged in the Amended Complaint. To that end, RCD cites a series of cases to establish that a "plaintiff may sue the defendant in tort if its actions violated a duty that is 'independent' of the contract." Opp. Br. at 30. That may be true—and, in fact, here RCD has alleged several *other* torts in its Amended Complaint that are unrelated to contractual obligations—but that does not mean that a plaintiff can bring the particular tort alleged in Count Three on such a theory.

---

[4] The Court may consider this document without converting the motion into one for summary judgment because the document is incorporated by reference in the Amended Complaint, is integral to RCD's allegations in paragraph 259(f), and RCD relied on the contents of the document in drafting the Amended Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

None of the cases RCD cites in its papers addresses the standard for a misappropriation of confidential information claim. *See id.* at 31-32. As such, they are beside the point. Similarly, RCD tries to impose duties on McGraw-Hill that are beyond the scope of its claim in Count Three. *See id.* at 32-33. The duties that RCD identifies are ones that courts have discussed in the context of tortious interference, fraud, and trade secret claims, none of which are applicable to a misappropriation of confidential information claim. *See, e.g., Rich v. New York Cent. & Hudson River R.R.*, 87 N.Y. 382, 398 (1882) (fraud claim); *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003) (tortious interference claim); *Kaleida Health v. Medtronic Sofamor Dankes USA*, 2006 U.S. Dist. LEXIS 92295, at *20-21 (W.D.N.Y. Dec. 21, 2006) (fraud claim); *Shen v. Signature Dev. Corp.*, 2009 NY Slip OP 52627U, at *10 (N.Y. Sup. Ct. Dec. 29, 2009) (trade secret claim).

## POINT III

## RCD HAS NOT MET THE PARTICULARITY REQUIREMENTS FOR A TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM

RCD's opposition to McGraw-Hill's motion to dismiss Count Five, which alleges tortious interference with prospective economic advantage, relies on a slew of factual allegations that go beyond the allegations in the Amended Complaint. *See, e.g.,* Opp. Br. at 35 (describing customer log).[5] Because "'the Court must limit its analysis to the four corners of the complaint,'" *Sudler v. City of New York*, 2010 WL 68095, at *5 (S.D.N.Y. Jan. 8, 2010), *adopted*

---

[5] This is true of many of the factual assertions found in RCD's opposition brief. For example, RCD writes that "MHC is careful to state that it 'intends to vigorously dispute RCD's allegations and expects the evidence to show that RCD's claims are without merit,' but it does not expressly deny any of the material allegations in RCD's Complaint." Opp. Br. at 16. The quote attributed to McGraw-Hill is not taken from either the Amended Complaint or McGraw-Hill's brief. Rather, it comes from a press release that McGraw-Hill was forced to issue in response to inflammatory statements made by RCD to the press. Similarly, RCD refers to individuals who have left McGraw-Hill since RCD filed its case. *See id.* at 11-12, 16-17. This fact comes from an online news article, and not the Amended Complaint or any pleadings before the Court. RCD's use of facts not contained in the Amended Complaint is improper.

*by* 2010 WL 726964 (S.D.N.Y. Feb. 19, 2010) (quoting *Vassilatos v. Ceram Tech Int'l*, 1993 WL 177780, at *5 (S.D.N.Y. May 19, 1993) (citing *Kopec v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991)), these allegations, including details about how RCD compiled its list of prospective customers, are not properly before the Court.[6]

The Court then is left with the same assertions that Dodge faced when it filed the instant motion; namely, that the 221 prospective and existing customers identified in the Amended Complaint would have subscribed to Reed Connect instead of the Dodge Network but for Dodge's alleged misrepresentations. Am. Compl. ¶¶ 211, 217, 225-26. Significantly, no New York district or state court post-*Iqbal* and *Twombly* has ever permitted a plaintiff to proceed on a theory that a defendant's alleged tortious conduct affected such a large number of business relationships. *See, e.g., Jim Mazz Auto, Inc. v. Progressive Cas. Ins.*, 2009 WL 910969, at *1 (W.D.N.Y. Mar. 31, 2009) (allowing claim to proceed with respect to four customers); *Johnson & Johnson v. Am. Nat'l Red Cross*, 528 F. Supp. 2d 462, 465 (S.D.N.Y. 2008) (letting claim proceed with respect to four business entities). This undoubtedly is because claims for tortious interference with prospective economic advantage have a "limited scope and an extremely high pleading standard." *Diario El Pais, S.L. v. The Nielsen Co.*, 2008 WL 4833012, at *7 (S.D.N.Y. Nov. 6, 2008) (citation omitted); *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 547 (S.D.N.Y. 2007); *Masefield AG v. Colonial Oil Indus.*, 2006 WL 346178, at *8 (S.D.N.Y. Feb. 15, 2006) (describing "limited scope" of tort).

Moreover, RCD is simply wrong when it alleges that it "is arguably under no

---

[6] Moreover, if the Court were to consider facts outside of the Amended Complaint (which Dodge does not believe is proper), Dodge would request leave to submit evidence showing that RCD's representations to the Court regarding the 221 identified potential customers are false. A cursory review of these potential customers shows that more than 20 of these customers, or approximately 10% of RCD's list, did not even subscribe to the Dodge Network from 2006 through 2009. This belies RCD's assertion that RCD conducted a "rigorous investigation" to compile this list. *See* Opp. Br. at 35.

12

requirement" to "specifically identify the relationships with its former or prospective customers with which Dodge allegedly interfered." Opp. Br. at 33 & n. 67 (citing cases decided *prior to* 2007). Every New York district court to have considered this issue after the Supreme Court's *Iqbal* and *Twombly* decisions—including this Court—has held that "a plaintiff must specify some particular, existing relationship" with which a defendant interfered. *See Krepps v. Reiner*, 588 F. Supp. 2d 471, 484 (S.D.N.Y. 2008) (Sweet, J.); Br. at 26 (citing cases).

In this case, RCD has failed to identify any specific prospective customers that were actually interfered with by Dodge, and instead has tried to circumvent the pleading requirements by identifying a universe of potential customers, **some of whom might** have been impacted by the alleged misconduct. RCD has admitted that the parties' databases are different in a number of material respects, Am. Compl. ¶¶ 25, 26, 28, 32, and that customers choose to subscribe to the databases for different reasons, *id.* ¶ 33. Based on RCD's own allegations, there are "obvious alternative explanation[s]" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951-52 (2009), for these customers' purchasing decisions, and it is implausible to allege, as RCD does, that every customer that chose Dodge Network over Reed Connect did so because of misrepresentations by Dodge regarding the project data in its database. Absent specific factual allegations not present here, RCD's claim for tortious interference should be dismissed.

## POINT IV

### RCD FAILS TO STATE A CLAIM UNDER NEW YORK GBL § 349

RCD does not dispute that when a business competitor brings a claim under New York GBL § 349, the "gravamen" of the complaint must be consumer injury to the public. *See* Opp. Br. at 38-40. Nor does RCD dispute that the gravamen of its Amended Complaint is injury to RCD, not to consumers. These concessions require dismissal of Count Six.

Nevertheless, in opposing McGraw-Hill's motion, RCD attempts to lower its burden by claiming that it can proceed simply by showing that the businesses in New York that subscribed to the Dodge Network (identified as building-product manufacturers, contractors and subcontractors, *see* Am. Compl. ¶ 13) suffered "some harm" by paying more for an allegedly inferior product. Opp. Br. at 38. This is not the standard, because it ignores the "gravamen" requirement. *See Securitron*, 65 F.3d at 264. It also rests on a flawed theory.

The focus of RCD's current theory is that Dodge allegedly used its unauthorized access to Reed Connect to misappropriate data and populate the Dodge Network. *See* Am. Compl. ¶¶ 130-34. According to RCD, Dodge then used this advantage to convince businesses to purchase Dodge Network instead of Reed Connect, misleading these businesses as to how Dodge had obtained its data. This is an implausible theory that lacks any basis in reality. But even if that did not doom RCD's claim, RCD's allegations would not establish "consumer injury" under Section 349, because under RCD's theory, those businesses that chose Dodge Network over Reed Connect based on the number of records in the respective databases got exactly what they paid for; namely, a database with more project data. For these businesses, the alleged misconduct provided a benefit, not an injury.

Indeed, under this theory, the only possible injury to New York businesses would be increased prices, which is ultimately the only injury identified in RCD's opposition papers. *See* Opp. Br. at 38. As such, this case falls squarely within this Court's decision in *Kforce, Inc. v. Alden Personnel, Inc.*, which held that: "[d]ue to the incidental nature of any alleged harm to the public and . . . as long as the public receives the product or service, a loss of business by plaintiff is not considered a public harm," 288 F. Supp. 2d 513, 519 (S.D.N.Y. 2003) (Sweet, J.), and Judge Marrero's decision in *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, which held that

14

an "allegation that consumers will be forced to return their items to [the defendant] and pay much higher prices to purchase the same items from Gucci[] does not set forth sufficient consumer harm to state a claim under § 349." 277 F. Supp. 2d 269, 275 (S.D.N.Y. 2003); *see also Seat Sack, Inc. v. Childcraft Educ. Corp.*, 2010 WL 245576, at *15 (S.D.N.Y. Jan. 22, 2010) (dismissing claim where "plaintiff has failed to produce evidence of harm to the public outweighing the alleged harm to plaintiff's business") (quotations omitted); *Gucci Am., Inc.*, 277 F. Supp. 2d at 274 (dismissing Section 349 claim where "gravamen of the complaint" was harm to counterclaimant's business).[7]

## CONCLUSION

For all the reasons stated, the Court should grant defendant McGraw-Hill's motion to dismiss Counts Three, Five, Six, Seven and Eight of the Amended Complaint for failure to state a claim on which relief could be granted.

Dated:    New York, New York
          March 19, 2010

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

By: */s/ Saul B. Shapiro*
    Saul B. Shapiro
    Joshua A. Goldberg
    *Attorneys for Defendant The McGraw-Hill Companies, Inc.*
    1133 Avenue of the Americas
    New York, New York 10036
    Tel: (212) 336-2000

---

[7] In response to McGraw-Hill's arguments, RCD relies on *Construction Technology, Inc. v. Lockformer Co.*, 704 F. Supp. 1212 (S.D.N.Y. 1989), *abrogated on other grounds, Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996). *See* Opp. Br. at 38-39. That case was decided *before* the Second Circuit held that "the gravamen of [a Section 349] complaint must be consumer injury or harm to the public interest," *Securitron*, 65 F.3d at 264 (quotation omitted), and does not reflect the current law. *See Seat Sack, Inc.* 2010 WL 245576, at *15 (dismissing claim where "plaintiff has failed to produce evidence of harm to the public outweighing the alleged harm to plaintiff's business") (quotations omitted).