```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

REED CONSTRUCTION DATA INC.,        :

                Plaintiff,          :   09 Civ. 8578 (JPO)(HBP)

    -against-                       :   OPINION
                                        AND ORDER
THE MCGRAW-HILL COMPANIES, INC.,    :
et al.,
                                    :
                Defendants.
                                    :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

This matter has been referred to me to resolve a dispute resulting from plaintiff's failure to identify some of the factual and legal bases for its damages claims in a timely manner.

II. Facts

A. Nature of the Action

This is a business tort action grounded in plaintiff's allegations that defendants have improperly obtained and misused

plaintiff's confidential business information.[1]  The parties are in the business of providing news concerning construction projects to building supply manufacturers, contractors and others in related industries.  The parties' customers use this information to identify potential sources of business and, at times, to prepare and submit bids.  The scope of the information the parties provide can be uniquely tailored to fit the nature of a customer's business.  For example, a fabricator of stained-glass windows or pews might limit its subscription to notices concerning the construction of houses of worship.  Subscriptions can also be limited geographically.  Plaintiff bills for its services by charging both a basic subscription fee and a "seat charge" based on the number of individuals within an organization who have access to the information provided by plaintiff.  The greater the number of people with access, the higher the aggregate seat charge will be.

　　　　Because public dissemination of the parties' information would destroy their businesses, subscribers are required to

---

[1] I set forth the facts here only to the extent necessary for an understanding the discovery disputes referred to me.  A fuller statement of the facts is set forth in the prior decision of the Honorable Robert W. Sweet, United States District Judge, granting in part and denying in part defendants' motion to dismiss the complaint.  <u>Reed Const. Data Inc. v. McGraw-Hill Cos.</u>, 745 F. Supp. 2d 343 (S.D.N.Y. 2010).

Case 1:09-cv-08578-JPO-HBP  Document 141  Filed 04/15/13  Page 3 of 12

agree that they will hold the information provided in confidence, not disclose it to third parties and will not use it for improper purposes.

Plaintiff alleges that defendant hired nominees to pose as legitimate participants in the construction industry and to subscribe to plaintiff's service. These nominees allegedly passed plaintiff's information on to defendants who used the information to prepare allegedly unfair comparisons of plaintiff's and defendants' services. Defendants allegedly used the comparisons as a marketing tool to divert customers from plaintiff, secure new customers that may have been considering plaintiff's service and maintain existing customers.

B. Relevant Procedural History

This action was commenced on October 8, 2009. The complaint has been amended three times, and the schedule for the completion of pretrial proceedings has been extended five times (see Docket Items 46, 62, 81, 102 and 125).

C. The Present Dispute

The present dispute relates to plaintiff's untimely disclosure of the factual and legal bases for two aspects of its damages claims.

3

Among other classes of damages, plaintiff seeks damages for the loss of customers and prospective customers as a result of defendants' allegedly unfair competition. As of the close of fact discovery on July 27, 2012, plaintiff had identified 221 customers and prospects that it lost as a result of defendants' alleged acts. On February 1 and March 1, 2013 -- more than a month after all expert reports had been exchanged -- plaintiff amended this aspect of its damages claim by dropping 198 allegedly lost customers and prospects and adding 26 new ones. If permitted, this amendment will leave plaintiff with a claim for damages based on the loss of 49 customers and prospects. There is no dispute that documents have been produced with respect to 23 of the 49 (i.e., the allegedly lost customers and prospects that have always been in the case); the parties dispute whether complete document production has been made with respect to the remaining 26.

In addition to amending the bases for its lost customer revenue claim, plaintiff has recently disclosed that it will attempt to seek damages for lost seat charges. That is, it will seek to recover the seat charges it would have imposed had it known that defendants' nominees were granting access to plaintiff's information to other individuals within defendants' organization. Although initial expert disclosures were made on

September 7, 2012, plaintiff did not disclose its claim for seat charge damages until February 1, 2013.

Defendants oppose some of plaintiff's amendments to its damages theory. Provided they are permitted to conduct six additional depositions, defendants are willing to consent to plaintiff proceeding with its damages claims with respect to the 23 allegedly lost customers and prospects that were identified prior to the close of fact discovery. Defendants oppose the balance of the proposed amendments on the ground that permitting them will result in undue burden and delay. Specifically, defendants claim that permitting plaintiff to seek damages for the 26 newly proffered lost customers and to seek lost seat damages will require the reopening of discovery, the re-doing of document discovery and the revision of expert reports. With respect to document discovery, defendants note that even if plaintiff has completed production of its own documents concerning the newly identified "lost" customers and prospects, defendants will have to re-search their own electronically stored information with respect to such customers and prospects.

III.  Analysis

The legal basis for defendants' opposition to plaintiff's amended disclosures is Fed.R.Civ.P. 37(c)(1) which provides:

> (1) **Failure to Disclose or Supplement.** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > (B) may inform the jury of the party's failure; and
> >
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

"The purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an adversary with new evidence." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (Marrero, D.J.), citing Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (Koeltl, D.J.); Johnson Electric North America Inc. v. Mabuchi Motor America Corp., 77 F. Supp. 2d 446, 458-59 (S.D.N.Y. 1999) (Sprizzo, D.J.).  Although there is some language in the Advisory Committee Notes to the 1993 amendments to Rule 37 suggesting that

6

preclusion is intended as an "automatic sanction" for untimely disclosures, the Court of Appeals has explained that the structure of the Rule does not warrant this interpretation and has directed District Courts to use a more flexible approach in assessing the consequences of a party's untimely disclosure or amendment of a disclosure previously made. Design Strategy Inc. v. Davis, 469 F.3d 284, 296-98 (2d Cir. 2006). Specifically, the Court of Appeals has identified four factors to be considered in determining whether an order of preclusion is appropriate: "(1) the party's explanation for the failure to comply with the disclosure requirement, (2) the importance of the excluded evidence, (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony, and (4) the possibility of a continuance." Kam Hing Enterprises, Inc. v. Wal-Mart Stores, Inc., 359 F. App'x 235, 237 (2d Cir. 2010), citing Design Strategy Inc. v. Davis, supra, 469 F.3d at 296; accord Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213 (2d Cir. 2009).

Applying these factors to this case leads me to conclude that evidence concerning the 26 newly proffered lost customers and prospects and the lost seat charge claim should be precluded.

Plaintiff attempts to justify its delay in identifying the newly proffered lost customers and prospects by claiming that the identities of these entities were buried in the millions of documents defendants produced, many of which were not produced until 2012. Although there is some truth to this contention, the contention is also belied by the record to some extent. At oral argument on this application, plaintiff claimed that there was a partial disclosure of the newly proffered lost customers and prospects through questions that were posed at depositions. However, if this is true, there is little justification for plaintiff's failure to identify these lost customers in a timely manner.

With respect to the addition of a claim for lost seat damages, plaintiff offers no substantial explanation for its delay. Plaintiff's request for this species of damages was not dependent on any discovery from defendants.

Although preclusion of the claims based on the new proffered lost customers and the lost seat charges will limit the potentially recoverable damages, such limitation is not substantial in light of the other damages sought. Plaintiff's damages claims, exclusive of the claims in issue on the present application, total in excess of $50 million; at oral argument, counsel stated that the damages attributable to the newly proffered lost

customers and prospects and the lost seat charge damages were approximately $1.5 and $1.6 million, respectively.  Although $3.1 million is not a trivial amount of money, it is less than 6 per cent of the damages sought in the case.  Thus, preclusion of the evidence will not materially alter the magnitude of the damages claimed.  In addition, there is no contention that the damages claims based on the new lost customers are either larger or stronger than plaintiff's other lost customer claims.

      Permitting the amendments at this time will also result in substantial prejudice to defendants, especially with respect to the claims based on the newly discovered lost customers.  Even if plaintiff is correct and all documents concerning the newly discovered lost customers have been produced, defendants will have to perform a new review of their own documents to locate potentially relevant documents.  At oral argument, defendants' counsel represented that such a review would entail searching a substantial amount of electronically stored information, at least some of which would have to be processed and restored before it is even searchable.  This expense could have been avoided had all the lost customers on which plaintiff is relying been timely disclosed.  In addition, permitting the amendments will require revision of the expert reports, and, perhaps, a new round of expert depositions.

Finally, although a continuance would ameliorate at least some of the prejudice asserted by defendants, I conclude that a further continuance is unwarranted in view of the substantial number of continuances that have already been granted. As noted above, the discovery deadlines in this case have already been extended five times, and the case is approximately three and one-half years old. Defendants claim, and plaintiff does not dispute, that an eight-week continuance will be necessary to complete discovery concerning the 23 lost customer claims that were in the case from its inception. Defendants estimate that, if plaintiff is permitted to assert damages claims based on the 26 additional customers, defendants will need approximately 14 weeks after the conclusion of document discovery to complete depositions. Even if the latter estimate is inflated by more than fifty per cent, the conclusion is inescapable that permitting the amendment plaintiff seeks will substantially prolong this matter. See Morritt v. Stryker Corp., No. 07-CV-2319, 2011 WL 3876960 at *8 (E.D.N.Y. Sept. 1, 2011) ("[T]he fact that discovery is closed and this case has been pending for over four years 'weighs strongly against the possibility of a continuance.'"), quoting Spotnana, Inc. v. Am. Talent Agency. Inc., 09 Civ. 3698 (LAP), 2010 WL 3341837 at *5 (S.D.N.Y. Aug. 17, 2010) (Preska, D.J.).

Although some of the foregoing factors weigh more heavily against permitting the amendment than others, I conclude that they all tip in favor of preclusion of the newly asserted damages claim. See generally Richmond v. General Nutrition Centers Inc., 08 Civ. 3577 (PAE)(HBP), 2012 WL 762307 at *8 (S.D.N.Y. 2012) (Engelmayer, D.J.).

IV. Conclusion

Accordingly, for all the foregoing reasons, plaintiff is precluded from seeking damages with respect to the 26 customers and prospects that were first identified in February and March 2013. Plaintiff is also precluded from seeking lost seat damages. The parties shall complete all remaining discovery buy June 17, 2013.

Dated:  New York, New York
        April 15, 2013

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

11

Copies transmitted to:

William N. Winthrow, Esq.
Kevin G. Meeks, Esq.
Troutman Sanders LLP
Suite 2500
600 Peachtree Street
Atlanta, Georgia   30308-2216

Saul B. Shapiro, Esq.
Joshua A. Goldberg, Esq.
James L. Kerwin, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York   10036