# EXHIBITS 132-144

# Filed Under Seal

# EXHIBIT 145

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
REED CONSTRUCTION DATA INC.,        :   Case No. 09-cv-8578 (JPO)
                                        :
           Plaintiff,           :   **PLAINTIFF REED CONSTRUCTION**
                                        :   **DATA INC.'S FIRST SUPPLEMENTAL**
                                        :   **RESPONSES AND OBJECTIONS TO**
                                        :   **DEFENDANT THE MCGRAW-HILL**
                                        :   **COMPANIES, INC.'S FIRST SET OF**
           v.                :   **INTERROGATORIES**
                                          :
THE MCGRAW-HILL COMPANIES, INC.;  :
JOHN DOES One through Five; and      :
JOHN DOE ENTITIES One through Five,  :
                                        :
           Defendants.        :
-----------------------------------------------------------X

       Plaintiff Reed Construction Data Inc. ("RCD") hereby supplements its objections and

responses to Defendant The McGraw-Hill Companies, Inc.'s ("McGraw-Hill's") First Set of

Interrogatories ("McGraw-Hill's First Interrogatories").  RCD incorporates by reference herein

its preliminary statement and General Objections in initial response to McGraw-Hill's First

Interrogatories.

## SUPPLEMENTAL RESPONSES TO INTERROGATORY NOS. 14-23

### INTERROGATORY NO. 14

       State the total amount of damages you claim to have suffered as "a proximate result of
Defendants' misrepresentations through Lorenz, Lewin, and certain of the John Doe
Defendants," as alleged in Paragraph 155 of the Amended Complaint, and the basis for that
computation.

### RESPONSE TO INTERROGATORY NO. 14:

       Subject to and without waiving its General Objections, RCD states that the Expert

Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages.

RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr.

Warren-Boulton, RCD was damaged by MHC's fraud in an amount no less than $1,651,680.95.

This figure does not include any pre- or post-judgment interest, exemplary damages, multipliers, attorney's fees, costs, or other amounts to which RCD may be entitled.

This figure was computed based on the number of McGraw-Hill or MHC representatives, employees, agents, or contractors that directly or indirectly fraudulently accessed RCD's proprietary data as maintained in the Reed Connect database each year during the years 2002 to 2009, inclusive, and the annual cost of access to the Reed Connect database, including individual license costs. Individuals from third party organizations were presumed to require a separate data contract. Based on RCD's review of the evidence produced by MHC, RCD believes MHC had access to Reed's Connect database or its predecessor systems from 2002 to 2009 through wrongful access of a third party's subscription. Thus, for 2002 to 2009 inclusive, RCD was damaged in an amount equal to the cost of an annual subscription plus seat licenses for all those who wrongfully received Connect data each year. RCD has determined that no fewer than the following number of MHC employees, agents, or contractors directly or indirectly fraudulently accessed RCD's propriety data each year: 2002: 64; 2003: 152; 2004: 190; 2005: 154; 2006: 175; 2007: 284; 2008: 172; 2009: 96. Accordingly, RCD was damaged by MHC's fraud for the cost of annual subscriptions in an amount no less than $494,390.45 plus an amount no less than $772,200.00 in seat licenses for those subscriptions.

Moreover, RCD has reason to believe that MHC made RCD's confidential and proprietary data, which MHC obtained through its fraud, available to all of its employees via the company intranet system. For each year in which MHC made RCD's wrongfully acquired data available to all its employees, RCD was harmed by the lost licensing fees for the total number of MHC employees who had access to the intranet system.

- 2 -

The evidence also shows that MHC shared its wrongful access with another third party, GfK / Roper, between 2002 and 2008. Thus, for 2002 to 2008, inclusive, RCD was further damaged in an amount equal to the cost of an annual subscription plus at least one seat license. Accordingly, RCD was damaged by MHC's fraud for the cost of annual subscriptions in an amount no less than $438,327.79 plus an amount no less than $4,200.00 in seat licenses for those subscriptions.

MHC's fraud also resulted in lost profits to RCD from the quantity effect of MHC's conduct. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, below. That calculation is expressly incorporated by reference herein.

RCD continues to review the extensive discovery produced in the litigation and reserves the right to supplement further these responses should it identify evidence of additional fraudulent conduct by MHC or additional damage to RCD caused by MHC's fraudulent conduct.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants.

Active 20167381v9 236436.000001

INTERROGATORY NO. 15

State the total amount of damages you claim to have suffered as "a proximate result of Dodge's misappropriation of [your] trade secret or confidential information," as alleged in Paragraphs 175 and 190 of the Amended Complaint, and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 15:

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD was damaged by MHC's misappropriation of RCD's trade secrets and misappropriation of RCD's confidential information by the quantity effect of MHC's misappropriation, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, below. That calculation is expressly incorporated by reference herein. MHC was further damaged in an amount equal to the number of individuals who gained access to RCD's proprietary data, either directly or indirectly, based on lost contract revenue and licensing fees. The amount and calculation of RCD's lost revenue are detailed in response to Interrogatory No. 14, above. That calculation is expressly incorporated by reference herein.

RCD continues to review the extensive discovery produced in the litigation and reserves the right to supplement further these responses should it identify evidence of additional misappropriation by MHC or additional damage to RCD caused by MHC's misappropriation.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures

- 4 -

articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the

liability of any John Doe Defendants.

INTERROGATORY NO. 16

State the total amount of damages you claim to have suffered as "a proximate result of
Dodge's unfair competition," as alleged in Paragraph 205 of the Amended Complaint, and the
basis for that computation.

RESPONSE TO INTERROGATORY NO. 16:

Subject to and without waiving its General Objections, RCD states that the Expert

Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages.

RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr.

Warren-Boulton, RCD was damaged by MHC's unfair competition by the quantity effect of

MHC's misappropriation, resulting in lost profits to RCD. The amount and calculation of RCD's

lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, below.

That calculation is expressly incorporated by reference herein.

RCD continues to review the extensive discovery produced in the litigation and reserves

the right to supplement further these responses should it identify evidence of additional unfair

competition by MHC or additional damage to RCD caused by MHC's unfair competition.

RCD does not, by this response, waive any additional recovery to which it may be

entitled, including but not limited to any multipliers that may apply to the articulated damages

(e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages,

pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures

articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the

liability of any John Doe Defendants.

Active 20167381v9 236436.000001

INTERROGATORY NO. 17

State the total amount of profits lost per customer for each of the customers identified in Paragraph 211 of the Amended Complaint. For each customer, state the basis for your computation, including any rebates or discounts offered to the customer, the dates on which each customer subscribed to a Reed service, the fees that each customer paid to Reed, the basis for your belief that the customer would have renewed its Reed subscription but for McGraw-Hill's alleged misconduct, the anticipated length of such renewal, and the basis for the estimated renewal term. For each customer, also identify the contact person for the customer, the Reed sales representative responsible for the customer, and any individuals with the knowledge of the customer's account.

RESPONSE TO INTERROGATORY NO. 17:

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD has been damaged by MHC's tortious interference with RCD's prospective economic advantage in the form of lost profits from the quantity effect of MHC's misconduct.

RCD states that the answers to all of McGraw-Hill's requests as to the list of customers found in Paragraph 211 of the Amended Complaint (Paragraph 225 of the Third Amended Complaint [dkt. no. 114]) require examining, compiling, and summarizing business records produced by both RCD and McGraw-Hill in the course of the litigation. The burden of deriving or ascertaining these answers will be substantially the same for either party. Therefore, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, RCD directs McGraw-Hill to McGraw-Hill and RCD's respective productions of documents during the course of this litigation, which contain relevant information, including emails; Roper Reports; proposals presented to customers and prospects; PowerPoints presented to customers and prospects; Executive Briefs, regional, state, and local comparisons; ad hoc comparisons; "exclusives" comparisons; customer contracts; and financial and customer data produced from both McGraw-Hill and RCD's CRM systems.

- 6 -

The table attached hereto as Exhibit A provides the requested detail as to the period of RCD subscription and annual contract value relating to each customer identified in Paragraph 211 of the Amended Complaint (Paragraph 225 of the Third Amended Complaint [dkt. no. 114]). It also identifies for these specific customers identified in the Complaint the forms of misconduct used by MHC according to evidence which has been produced in the litigation and identified to date.

Based on further evaluation of the evidence produced by MHC in this litigation, RCD has refined its list of specific customers and prospects with whom MHC interfered, damaging RCD's prospective business relationships with those customers and prospects. Although not specifically requested by McGraw-Hill, a list of those customers and prospects, including the year of MHC's misconduct (if available), is attached hereto as Exhibit B.

Inclusion of this list is not intended to limit RCD's damages relating to MHC's misconduct. MHC engaged in a pattern and practice of broadly disseminating misappropriated data in the form of misleading comparisons. Because of this broad dissemination, it would be impossible for RCD to identify every instance in which it was harmed. In addition to the customers and prospects identified in Exhibit B as specified in documents produced in this litigation, MHC delivered hard copies of the Roper Reports to its employees and instructed its employees to show, but not disseminate, the Roper Reports to customers. Moreover, there are hundreds of other unique documents produced in this litigation which reference the use of comparisons with customers and prospects without identifying their names.

For each customer RCD lost, RCD was damaged in an amount based on the value of that customer's cancelled subscription, the anticipated renewal period, and RCD's incremental margin for renewal accounts. For each prospect RCD lost, RCD was damaged in an amount

- 7 -

based on the value of that prospect's prospective subscription, the anticipated renewal period, and RCD's incremental margin for new accounts.

RCD continues to review the extensive discovery produced in the litigation and reserves the right to supplement further these responses should it identify evidence of additional tortious interference by MHC or additional damage to RCD caused by MHC's tortious interference. RCD does not, by this response, waive its right to continue to identify additional customers and prospects that it lost to MHC as a result of MHC's misconduct. RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants.

<u>INTERROGATORY NO. 18</u>

State the total amount of profits lost per customer for each of the customers identified in Paragraph 225 of the Amended Complaint. For each customer, state the basis for your computation, including any rebates or discounts offered to the customer, the basis for your belief the customer would have purchased a Reed subscription but for McGraw-Hill's alleged misconduct, the anticipated length of such subscription and any subsequent renewals for which you claim lost profits, and the basis for the estimated subscription and renewal terms. For each customer, also identify the contact person for the customer, the Reed sales representative responsible for the customer, and any individuals with knowledge of soliciting the customer.

<u>RESPONSE TO INTERROGATORY NO. 18:</u>

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD has been damaged by MHC's tortious interference with RCD's

- 8 -

prospective economic advantage in the form of lost profits from the quantity effect of MHC's misconduct.

RCD states that the answers to all of McGraw-Hill's requests as to the list of prospects found in Paragraph 225 of the Amended Complaint (Paragraph 240 of the Third Amended Complaint [dkt. no. 114]) require examining, compiling, and summarizing business records produced by both RCD and McGraw-Hill in the course of the litigation. The burden of deriving or ascertaining these answers will be substantially the same for either party. Therefore, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, RCD directs McGraw-Hill and RCD's respective productions of documents during the course of this litigation, which contain relevant information, including emails; Roper Reports; proposals presented to customers and prospects; PowerPoints presented to customers and prospects; Executive Briefs, regional, state, and local comparisons; ad hoc comparisons; "exclusives" comparisons; customer contracts; and financial and customer data produced from both McGraw-Hill and RCD's CRM systems.

The table attached hereto as Exhibit C provides the requested detail as to each prospect identified in Paragraph 225 of the Amended Complaint (Paragraph 240 of the Third Amended Complaint [dkt. no. 114]). It also identifies for these specific prospects identified in the Complaint the forms of misconduct used by MHC according to evidence which has been produced in the litigation.

Based on further evaluation of the evidence produced by MHC in this litigation, RCD has refined its list of specific customers and prospects with whom MHC interfered, damaging RCD's prospective business relationships with those customers and prospects. Although not specifically requested by McGraw-Hill, a list of those customers and prospects, including the year of MHC's misconduct (if available), is attached hereto as Exhibit B.

- 9 -

Inclusion of this list is not intended to limit RCD's damages relating to MHC's misconduct. MHC engaged in a pattern and practice of broadly disseminating misappropriated data in the form of misleading comparisons. Because of this broad dissemination, it would be impossible for RCD to identify every instance in which it was harmed. In addition to the customers and prospects identified in Exhibit B as specified in documents produced in this litigation, MHC delivered hard copies of the Roper Reports to its employees and instructed its employees to show, but not disseminate, the Roper Reports to customers. Moreover, there are hundreds of other unique documents produced in this litigation which reference the use of comparisons with customers and prospects without identifying their names.

For each prospect RCD lost, RCD was damaged in an amount based on the value of that prospect's prospective subscription, the anticipated renewal period, and RCD's incremental margin for new accounts. For each customer RCD lost, RCD was damaged in an amount based on the value of that customer's cancelled subscription, the anticipated renewal period, and RCD's incremental margin for renewal accounts.

RCD continues to review the extensive discovery produced in the litigation and reserves the right to supplement further these responses should it identify evidence of additional tortious interference by MHC or additional damage to RCD caused by MHC's tortious interference. RCD does not, by this response, waive its right to continue to identify additional customers and prospects that it lost to MHC as a result of MHC's misconduct. RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief

- 10 -

RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe

Defendants.

INTERROGATORY NO. 19

State the total amount of damages you claim to have suffered as "a proximate result of
Dodge's deceptive acts and practices," as alleged in Paragraph 249 of the Amended Complaint,
and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 19:

Subject to and without waiving its General Objections, RCD states that the Expert

Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages.

RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr.

Warren-Boulton, RCD was damaged by MHC's misconduct by the quantity effect of MHC's

misconduct, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits

from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above. That

calculation is expressly incorporated by reference herein.

RCD continues to review the extensive discovery produced in the litigation and reserves

the right to supplement further these responses should it identify evidence of additional

misconduct by MHC or additional damage to RCD caused by MHC's misconduct.

RCD does not, by this response, waive any additional recovery to which it may be

entitled, including but not limited to any multipliers that may apply to the articulated damages

(e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages,

pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures

articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the

liability of any John Doe Defendants.

- 11 -

INTERROGATORY NO. 20:

      State the total amount of losses you claim to have suffered as "a result of [Dodge's] misconduct," as alleged in Paragraph 272 of the Amended Complaint, and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 20:

      Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD was damaged by MHC's misconduct by the quantity effect of MHC's RICO violations, resulting in lost profits to RCD.  The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above.  That calculation is expressly incorporated by reference herein.

      RCD continues to review the extensive discovery produced in the litigation and reserves the right to supplement further these responses should it identify evidence of additional RICO violations by MHC or additional damage to RCD caused by MHC's RICO violations.

      RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees.  The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants.

<u>INTERROGATORY NO. 21</u>

State the total amount of losses you claim to have suffered as "a result of [Dodge's] participation in the conspiracy," as alleged in Paragraph 281 of the Amended Complaint, and the basis for that computation.

<u>RESPONSE TO INTERROGATORY NO. 21:</u>

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD was damaged by MHC's conspiracy by the quantity effect of MHC's misconduct, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above. That calculation is expressly incorporated by reference herein.

RCD continues to review the extensive discovery produced in the litigation and reserves the right to supplement further these responses should it identify evidence of MHC's conspiracy or additional damage to RCD caused by MHC's conspiracy.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants.

- 13 -

INTERROGATORY NO. 22

State the total amount of damages you claim to have suffered in lost profits and damage to reputation and goodwill as a result of "Dodge's monopolization of the market for national online subscription services for construction project information," as alleged in Paragraph 300 of the Amended Complaint, and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 22:

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD was damaged by MHC's misconduct by the quantity effect of MHC's misconduct, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above. That calculation is expressly incorporated by reference herein, with the caveat that only national accounts are included in RCD's antitrust damages.

RCD continues to review the extensive discovery produced in the litigation and reserves the right to supplement further these responses should it identify evidence of additional antitrust violations by MHC or additional damage to RCD caused by MHC's antitrust violations.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants.

- 14 -

INTERROGATORY NO. 23

State the total amount of damages you claim to have suffered in lost profits and damage to reputation and goodwill as a result of "Dodge's attempted monopolization of the market for national online subscription services for construction project information," as alleged in Paragraph 315 of the Amended Complaint, and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 23:

Subject to and without waiving its General Objections, RCD states that the Expert

Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages.

RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr.

Warren-Boulton, RCD was damaged by MHC's attempted monopolization by the quantity effect

of MHC's misconduct, resulting in lost profits to RCD. The amount and calculation of RCD's

lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above.

That calculation is expressly incorporated by reference herein, with the caveat that only national

accounts are included in RCD's antitrust damages.

RCD continues to review the extensive discovery produced in the litigation and reserves

the right to supplement further these responses should it identify evidence of additional

attempted monopolization by MHC or additional damage to RCD caused by MHC's attempted

monopolization.

RCD does not, by this response, waive any additional recovery to which it may be

entitled, including but not limited to any multipliers that may apply to the articulated damages

(e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages,

pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures

articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the

liability of any John Doe Defendants.

This ___1st___ day of February, 2013.

TROUTMAN SANDERS LLP

Aurora Cassirer
Matthew J. Aaronson
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 704-6000
aurora.cassirer@troutmansanders.com
matthew.aaronson@troutmansanders.com

William N. Withrow, Jr.
James A. Lamberth
Kevin G. Meeks
(Admitted *pro hac vice*)
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Tel: (404) 885-3000
william.withrow@troutmansanders.com
james.lamberth@troutmansanders.com
kevin.meeks@troutmansanders.com

Attorneys for Plaintiff Reed Construction Data Inc.

- 16 -

**Exhibits to Reed Construction Data Inc.'s First Supplemental Responses to The McGraw-Hill Companies, Inc.'s First Set of Interrogatories filed under seal**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

REED CONSTRUCTION DATA INC.,    :   Case No. 09-cv-8578 (JPO)
        :
      Plaintiff,    :
        :   **VERIFICATION**
      v.    :
        :
THE MCGRAW-HILL COMPANIES, INC.,  :
et al.    :
        :
      Defendants.   :
--------------------------------------------------------X

Personally appeared before me, the undersigned officer, duly authorized to administer

oaths,  Iain Melville, who, after being duly sworn, deposes and says that he is the Chief

Executive Officer of Reed Construction Data Inc. ("RCD"); that he signs this Verification for

and on behalf of RCD and is duly authorized to do so; that the information stated in **Plaintiff**

**Reed Construction Data Inc.'s First Supplemental Responses to Defendant The McGraw-**

**Hill Companies, Inc.'s First Set of Interrogatories ("First Supplemental Responses")** is not

within the personal knowledge of any one individual at RCD, and has been assembled by

authorized employees and counsel for RCD from the records and files kept by RCD in the

regular and ordinary course of business, from interviews of appropriate employees of RCD, and

based on review of documents produced during litigation and subject to a protective order, some

of which he has not personally reviewed pursuant to the protective order; and that the facts stated

in **Plaintiff Reed Construction Data Inc.'s First Supplemental Responses** are true and correct

to the best of his knowledge, information and belief.

_/S/ Melville_
Iain Melville

Sworn to and subscribed
before me this 1st day of February, 2013

_Cathy Ward_
Notary Public
My Commission Expires: 2/17/2015

CATHY WARD
NOTARY
EXPIRES
GEORGIA
FEB. 17, 2015
PUBLIC
CHEROKEE COUNTY

Active 20167381v9 236436.000001

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

REED CONSTRUCTION DATA INC.,                :
                                            :
                    Plaintiff,              :
                                            :    Case No. 09-cv-8578 (JPO)
           v.                               :
                                            :
THE MCGRAW-HILL COMPANIES, INC.,            :
                                            :
                    Defendant.              :
-------------------------------------------------------X

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the within and foregoing *PLAINTIFF REED
CONSTRUCTION DATA INC.'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANT THE
MCGRAW-HILL COMPANIES, INC.'S FIRST SET OF INTERROGATORIES* upon the opposing
party via Federal Express addressed as follows:

> Saul B. Shapiro
> Michelle Waller Cohen
> Joshua Aaron Goldberg
> James Luke Kerwin
> Patterson Belknap Webb & Tyler LLP
> 1133 Avenue of the Americas
> New York, NY 10036

This 1st day of February, 2013.

WILLIAM N. WITHROW, JR.

TROUTMAN SANDERS LLP
600 Peachtree Street, N.E.
Suite 5200, Bank of America Plaza
Atlanta, GA 30308-2216
(404) 885-3000 (voice)
(404) 885-3996 (facsimile)

# EXHIBIT 146

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

| | | |
|---|---|---|
| REED CONSTRUCTION DATA INC., | : | Case No. 09-cv-8578 (JPO) |
| | : | |
| Plaintiff, | : | **PLAINTIFF REED CONSTRUCTION** |
| | : | **DATA, INC.'s SECOND** |
| v. | : | **SUPPLEMENTAL RESPONSES AND** |
| | : | **OBJECTIONS TO DEFENDANT** |
| | : | **THE MCGRAW-HILL COMPANIES,** |
| THE MCGRAW-HILL COMPANIES, INC.; | : | **INC.'S FIRST SET OF** |
| JOHN DOES One through Five; and | : | **INTERROGATORIES** |
| JOHN DOE ENTITIES One through Five, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------X

Plaintiff Reed Construction Data Inc. ("RCD") hereby supplements its objections and
responses to Defendant The McGraw-Hill Companies, Inc.'s ("McGraw-Hill's") First Set of
Interrogatories ("McGraw-Hill's First Interrogatories").  RCD incorporates by reference herein
its preliminary statement and General Objections in initial response to McGraw-Hill's First
Interrogatories, as well as responses and first supplemental responses to McGraw-Hill's First
Interrogatories, to the extent they are not contradicted by the information that follows.

**SECOND SUPPLEMENTAL RESPONSES TO INTERROGATORY NOS. 14-23**

INTERROGATORY NO. 14

State the total amount of damages you claim to have suffered as "a proximate result of
Defendants' misrepresentations through Lorenz, Lewin, and certain of the John Doe
Defendants," as alleged in Paragraph 155 of the Amended Complaint, and the basis for that
computation.

RESPONSE TO INTERROGATORY NO. 14:

Subject to and without waiving its General Objections, RCD states that the Expert

Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages.

RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr.

Warren-Boulton, RCD was damaged by MHC's fraud in an amount no less than $1,916,718.

Active 20300664v4 236436.000001

This figure does not include any pre- or post-judgment interest, exemplary damages, multipliers, attorney's fees, costs, or other amounts to which RCD may be entitled.

This figure was computed based on the number of McGraw-Hill or MHC representatives, employees, agents, or contractors that directly or indirectly fraudulently accessed RCD's proprietary data as maintained in the Reed Connect database each year during the years 2002 to 2009, inclusive, and the annual cost of access to the Reed Connect database, including individual license costs. Individuals from third party organizations were presumed to require a separate data contract. Based on RCD's review of the evidence produced by MHC, RCD believes MHC had access to Reed's Connect database or its predecessor systems from 2002 to 2009 through wrongful access of a third party's subscription. Thus, for 2002 to 2009 inclusive, RCD was damaged in an amount equal to the cost of an annual subscription plus seat licenses for all those who wrongfully received Connect data each year. RCD has determined that no fewer than the following number of MHC employees, agents, or contractors directly or indirectly fraudulently accessed RCD's propriety data each year: 2002: 101; 2003: 328; 2004: 192; 2005: 155; 2006: 185; 2007: 291; 2008: 248; 2009: 133. Accordingly, RCD was damaged by MHC's fraud for the cost of annual subscriptions in an amount no less than $494,390.45 plus an amount no less than $979,800.00 in seat licenses for those subscriptions.

Moreover, RCD has reason to believe that MHC made RCD's confidential and proprietary data, which MHC obtained through its fraud, available to all of its employees via the company intranet system. For each year in which MHC made RCD's wrongfully acquired data available to all its employees, RCD was harmed by the lost licensing fees for the total number of MHC employees who had access to the intranet system.

- 2 -

The evidence also shows that MHC shared its wrongful access with another third party, GfK / Roper, between 2002 and 2008. Thus, for 2002 to 2008, inclusive, RCD was further damaged in an amount equal to the cost of an annual subscription plus at least one seat license. Accordingly, RCD was damaged by MHC's fraud for the cost of annual subscriptions in an amount no less than $438,327.79 plus an amount no less than $4,200.00 in seat licenses for those subscriptions.

MHC's fraud also resulted in lost profits to RCD from the quantity effect of MHC's conduct. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, below. That calculation is expressly incorporated by reference herein.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants. RCD reserves its rights to supplement further these responses if warranted.

INTERROGATORY NO. 15

State the total amount of damages you claim to have suffered as "a proximate result of Dodge's misappropriation of [your] trade secret or confidential information," as alleged in Paragraphs 175 and 190 of the Amended Complaint, and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 15:

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr.

- 3 -

Warren-Boulton, RCD was damaged by MHC's misappropriation of RCD's trade secrets and

misappropriation of RCD's confidential information by the quantity effect of MHC's

misappropriation, resulting in lost profits to RCD. The amount and calculation of RCD's lost

profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, below. That

calculation is expressly incorporated by reference herein. MHC was further damaged in an

amount equal to the number of individuals who gained access to RCD's proprietary data, either

directly or indirectly, based on lost contract revenue and licensing fees. The amount and

calculation of RCD's lost revenue are detailed in response to Interrogatory No. 14, above. That

calculation is expressly incorporated by reference herein.

RCD does not, by this response, waive any additional recovery to which it may be

entitled, including but not limited to any multipliers that may apply to the articulated damages

(e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages,

pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures

articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the

liability of any John Doe Defendants. RCD reserves its rights to supplement further these

responses if warranted.

INTERROGATORY NO. 16

State the total amount of damages you claim to have suffered as "a proximate result of
Dodge's unfair competition," as alleged in Paragraph 205 of the Amended Complaint, and the
basis for that computation.

RESPONSE TO INTERROGATORY NO. 16:

Subject to and without waiving its General Objections, RCD states that the Expert

Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages.

RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr.

Warren-Boulton, RCD was damaged by MHC's unfair competition by the quantity effect of

- 4 -

MHC's misappropriation, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, below. That calculation is expressly incorporated by reference herein.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants. RCD reserves its rights to supplement further these responses if warranted.

INTERROGATORY NO. 17

State the total amount of profits lost per customer for each of the customers identified in Paragraph 211 of the Amended Complaint. For each customer, state the basis for your computation, including any rebates or discounts offered to the customer, the dates on which each customer subscribed to a Reed service, the fees that each customer paid to Reed, the basis for your belief that the customer would have renewed its Reed subscription but for McGraw-Hill's alleged misconduct, the anticipated length of such renewal, and the basis for the estimated renewal term. For each customer, also identify the contact person for the customer, the Reed sales representative responsible for the customer, and any individuals with the knowledge of the customer's account.

RESPONSE TO INTERROGATORY NO. 17:

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD has been damaged by MHC's tortious interference with RCD's prospective economic advantage in the form of lost profits from the quantity effect of MHC's misconduct.

Counsel for RCD used information provided in discovery to generate a list of companies subjected to MHC's misconduct as described in the Third Amended Complaint. This list was previously produced as Exhibit B to RCD's First Supplemental Responses to The McGraw-Hill Companies, Inc.'s First Set of Interrogatories and identifies more than 1,400 companies subjected to MHC's misconduct. Counsel for RCD compared the information in the list of customers subjected to MHC misconduct to cancellations, as well as the extracts of MHC's and RCD's respective customer contract information systems[1] and other documents produced during the litigation.

Through the review described above, counsel for RCD sought to identify companies for which the following elements could be established. The company:

(1) was involved in a pre-existing business relationship with RCD in the form of an existing subscription agreement;

(2) was subjected to MHC's misconduct through the use of information gained through wrongful access to RCD's proprietary data in the course of MHC's sales process;[2]

(3) was subjected to MHC's misconduct during the existence of the customer's business relationship with RCD;

(4) ended or reduced its RCD subscription after being subjected to MHC's misconduct, either by cancelling its RCD subscription, permitting its RCD subscription to lapse, or reducing the extent of its RCD subscription; and

---

[1] The extracts of subscription data from MHC's and RCD's respective customer contract information systems can be found at RCD25061637-38, RCD25061645, RCD25061753, RCD25061758-69, and MHC09203654.
[2] Documents establishing MHC's misconduct as to the customers and prospects as to which RCD claims quantity effect damages are identified in Exhibit 2.

- 6 -

(5) entered into or continued a business relationship with MHC in the form of a subscription agreement after MHC's misconduct and around the time it terminated or reduced its RCD subscription.

Companies that counsel for RCD has identified that met all of the elements described above and for which quantity effect damages have been calculated are identified on Exhibit 1.

For each customer on Exhibit 1, RCD has identified the value of the subscription RCD lost due to MHC's misconduct as well as the basis for the valuation. In most instances, this figure is based on the value identified at RCD06040588 (Defense Exhibit 368). This figure was then verified against RCD scanned contracts, produced at RCD24530249-RCD25053466. In certain limited cases, other documents produced in the litigation were relied upon to identify the value of a customer's subscription; for example, where RCD proposed a lower subscription price for a renewal than it had previously offered, the lower proposed renewal price was used as the lost subscription value rather than the higher previous subscription price.[3] The basis for identifying each customer's subscription value is identified in Exhibit 1.

RCD has assumed that it lost each customer for one subscription term. If the previous RCD subscription term was two years or greater, RCD assumed a subscription term of one year. Lost profit was calculated by multiplying the subscription value times the subscription term times incremental margin for existing customers of 85%.

MHC engaged in a pattern and practice of broadly disseminating misappropriated data in the form of misleading comparisons. Because of this broad dissemination, it would be impossible for RCD to identify every instance in which it was harmed. RCD has previously identified, in its first supplemental interrogatory responses, hundreds of customers and prospects

---

[3] Documents relied upon in establishing subscription values are identified in Exhibit 3.

subjected to MHC's misconduct, as identified through documents produced in this litigation.
MHC delivered hard copies of the Roper Reports to its employees and instructed its employees
to show, but not disseminate, the Roper Reports to customers. Moreover, there are hundreds of
unique documents produced in this litigation that reference the use of comparisons with
customers and prospects without identifying their names. Accordingly, the customers identified
and evidence cited in Exhibits 1, 2 and 3 do not constitute the totality of customers or evidence
relevant to RCD's claims and defenses.

RCD does not, by this response, waive any additional recovery to which it may be
entitled, including but not limited to any multipliers that may apply to the articulated damages
(e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages,
pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures
articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the
liability of any John Doe Defendants. RCD reserves its rights to supplement further these
responses if warranted.

INTERROGATORY NO. 18

State the total amount of profits lost per customer for each of the customers identified in
Paragraph 225 of the Amended Complaint. For each customer, state the basis for your
computation, including any rebates or discounts offered to the customer, the basis for your belief
the customer would have purchased a Reed subscription but for McGraw-Hill's alleged
misconduct, the anticipated length of such subscription and any subsequent renewals for which
you claim lost profits, and the basis for the estimated subscription and renewal terms. For each
customer, also identify the contact person for the customer, the Reed sales representative
responsible for the customer, and any individuals with knowledge of soliciting the customer.

RESPONSE TO INTERROGATORY NO. 18:

Subject to and without waiving its General Objections, RCD states that the Expert
Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages.
RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr.

- 8 -

Warren-Boulton, RCD has been damaged by MHC's tortious interference with RCD's prospective economic advantage in the form of lost profits from the quantity effect of MHC's misconduct.

Counsel for RCD used information provided in discovery to generate a list of companies subjected to MHC's misconduct as described in the Third Amended Complaint. This list was previously produced as Exhibit B to RCD's First Supplemental Responses to The McGraw-Hill Companies, Inc.'s First Set of Interrogatories and identifies more than 1,400 companies subjected to MHC's misconduct. Counsel for RCD compared the information in the list of customers subjected to MHC misconduct to the extracts of MHC's and RCD's respective customer contract information systems[4] and other documents produced during the litigation.

Through the review described above, counsel for RCD sought to identify companies for which the following elements could be established. The company:

(1) was involved in a pre-existing business relationship with RCD in the form of an ongoing discussion regarding establishing a subscription agreement;

(2) was subjected to MHC's misconduct through the use of information gained through wrongful access to RCD's proprietary data in the course of MHC's sales process;[5]

(3) was subjected to MHC's misconduct during the existence of the prospect's business relationship with RCD;

---

[4] The extracts of pricing data from MHC's and RCD's respective customer contract information systems can be found at RCD25061637-38, RCD25061645, RCD25061753, RCD61758-69, and MHC09203654.
[5] Documents establishing MHC's misconduct relating to the customers and prospects as to which RCD claims quantity effect damages are identified in Exhibit 2.

Active 20300664v4 236436.000001

(4) ended its business relationship with RCD after being subjected to MHC's misconduct by declining to execute an RCD subscription or cancelling a new RCD subscription during the initial subscription term; and

(5) entered into or continued a business relationship with MHC in the form of a subscription agreement after MHC's misconduct.

Companies that counsel for RCD has identified that met all of the elements described above and for which quantity effect damages have been calculated are identified on Exhibit 4.

For each prospect on Exhibit 4, RCD has identified the value of the subscription RCD lost due to MHC's misconduct as well as the basis for the valuation. In most instances, this figure is based on the value of the last identified proposal RCD made to the prospect. In certain limited cases, other documents produced in the litigation were relied upon to identify the value of a prospect's subscription; for example, an actual prior or subsequent subscription value may have been used where no proposal value was available. The basis for identifying each prospect's subscription value is identified in Exhibit 4.[6] RCD assumed it lost each prospect for a one year subscription term. Lost profit was calculated by multiplying the subscription value times the subscription term times incremental margin for new customers of 70%.

MHC engaged in a pattern and practice of broadly disseminating misappropriated data in the form of misleading comparisons. Because of this broad dissemination, it would be impossible for RCD to identify every instance in which it was harmed. RCD has previously identified, in its first supplemental interrogatory responses, hundreds of customers and prospects subjected to MHC's misconduct, as identified through documents produced in this litigation. MHC delivered hard copies of the Roper Reports to its employees and instructed its employees

---

[6] Documents relied upon in establishing subscription values are identified in Exhibit 3.

Active 20300664v4 236436.000001

to show, but not disseminate, the Roper Reports to customers. Moreover, there are hundreds of unique documents produced in this litigation which reference the use of comparisons with customers and prospects without identifying their names. Accordingly, the prospects identified and evidence cited in Exhibits 1, 2, 3, and 4 do not constitute the totality of prospects or evidence relevant to RCD's claims and defenses.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants. RCD reserves its rights to supplement further these responses if warranted.

INTERROGATORY NO. 19

State the total amount of damages you claim to have suffered as "a proximate result of Dodge's deceptive acts and practices," as alleged in Paragraph 249 of the Amended Complaint, and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 19:

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD was damaged by MHC's misconduct by the quantity effect of MHC's misconduct, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above. That calculation is expressly incorporated by reference herein.

- 11 -

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants. RCD reserves its rights to supplement further these responses if warranted.

INTERROGATORY NO. 20:

State the total amount of losses you claim to have suffered as "a result of [Dodge's] misconduct," as alleged in Paragraph 272 of the Amended Complaint, and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 20:

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD was damaged by MHC's misconduct by the quantity effect of MHC's RICO violations, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above. That calculation is expressly incorporated by reference herein.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the

- 12 -

liability of any John Doe Defendants. RCD reserves its rights to supplement further these

responses if warranted.

<u>INTERROGATORY NO. 21</u>

State the total amount of losses you claim to have suffered as "a result of [Dodge's] participation in the conspiracy," as alleged in Paragraph 281 of the Amended Complaint, and the basis for that computation.

<u>RESPONSE TO INTERROGATORY NO. 21:</u>

Subject to and without waiving its General Objections, RCD states that the Expert

Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages.

RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr.

Warren-Boulton, RCD was damaged by MHC's conspiracy by the quantity effect of MHC's

misconduct, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits

from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above. That

calculation is expressly incorporated by reference herein.

RCD does not, by this response, waive any additional recovery to which it may be

entitled, including but not limited to any multipliers that may apply to the articulated damages

(e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages,

pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures

articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the

liability of any John Doe Defendants. RCD reserves its rights to supplement further these

responses if warranted.

INTERROGATORY NO. 22

State the total amount of damages you claim to have suffered in lost profits and damage to reputation and goodwill as a result of "Dodge's monopolization of the market for national online subscription services for construction project information," as alleged in Paragraph 300 of the Amended Complaint, and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 22:

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD was damaged by MHC's misconduct by the quantity effect of MHC's misconduct, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above. That calculation is expressly incorporated by reference herein, with the caveat that only national accounts are included in RCD's antitrust damages. Exhibits 1 and 2 specifically identify customers and prospects identified as national accounts, and provide separate subtotals for national accounts. National accounts are defined as those customers or prospective customers of construction project subscriptions providing information in fifty states.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants. RCD reserves its rights to supplement further these responses if warranted.

Active 20300664v4 236436.000001

INTERROGATORY NO. 23

State the total amount of damages you claim to have suffered in lost profits and damage to reputation and goodwill as a result of "Dodge's attempted monopolization of the market for national online subscription services for construction project information," as alleged in Paragraph 315 of the Amended Complaint, and the basis for that computation.

RESPONSE TO INTERROGATORY NO. 23:

Subject to and without waiving its General Objections, RCD states that the Expert Damage Report of Frederick R. Warren-Boulton, Ph.D., articulates RCD's price-effect damages. RCD states that, in addition to the damages articulated in the Expert Damage Report of Dr. Warren-Boulton, RCD was damaged by MHC's attempted monopolization by the quantity effect of MHC's misconduct, resulting in lost profits to RCD. The amount and calculation of RCD's lost profits from quantity effect are detailed in response to Interrogatory Nos. 17 and 18, above. That calculation is expressly incorporated by reference herein, with the caveat that only national accounts are included in RCD's antitrust damages. Exhibits 1 and 2 specifically identify customers and prospects identified as national accounts, and provide separate subtotals for national accounts. National accounts are defined as those customers or prospective customers of construction project subscriptions providing information in fifty states.

RCD does not, by this response, waive any additional recovery to which it may be entitled, including but not limited to any multipliers that may apply to the articulated damages (e.g., treble damages), disgorgement, nominal damages, punitive damages, exemplary damages, pre-judgment and post-judgment interest, costs and expenses, or attorney's fees. The figures articulated here relate only to relief RCD seeks from McGraw-Hill, and may not encompass the liability of any John Doe Defendants. RCD reserves its rights to supplement further these responses if warranted.

- 15 -

This 1st day of March, 2013.

TROUTMAN SANDERS LLP

Aurora Cassirer
Matthew J. Aaronson
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 704-6000
aurora.cassirer@troutmansanders.com
matthew.aaronson@troutmansanders.com

William N. Withrow, Jr.
James A. Lamberth
Kevin G. Meeks
(Admitted *pro hac vice*)
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Tel: (404) 885-3000
william.withrow@troutmansanders.com
james.lamberth@troutmansanders.com
kevin.meeks@troutmansanders.com

Attorneys for Plaintiff Reed Construction Data Inc.

- 16 -

# Exhibits to Reed Construction Data Inc.'s Second Supplemental Responses to The McGraw-Hill Companies, Inc.'s First Set of Interrogatories filed under seal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

REED CONSTRUCTION DATA INC.,                     :    Case No. 09-cv-8578 (JPO)
                                                 :
                    Plaintiff,                   :
                                                 :    **VERIFICATION**
            v.                                   :
                                                 :
THE MCGRAW-HILL COMPANIES, INC.,                 :
et al.                                           :
                                                 :
                    Defendants.                  :
-----------------------------------------------------------X

       Personally appeared before me, the undersigned officer, duly authorized to administer

oaths,  Iain Melville, who, after being duly sworn, deposes and says that he is the Chief

Executive Officer of Reed Construction Data Inc. ("RCD"); that he signs this Verification for

and on behalf of RCD and is duly authorized to do so; that the information stated in **Plaintiff**

**Reed Construction Data Inc.'s Second Supplemental Responses to Defendant The**

**McGraw-Hill Companies, Inc.'s First Set of Interrogatories ("Second Supplemental**

**Responses")** is not within the personal knowledge of any one individual at RCD, and has been

assembled by authorized counsel for RCD based on interviews of appropriate employees of RCD

and counsel's review of documents produced during litigation; and that the facts stated in **RCD's**

**Second Supplemental Responses** are true and correct to the best of his knowledge, information

and belief.


                                        _____
                                        Iain Melville

Sworn to and subscribed
before me this 1st day of March, 2013

_____
Notary Public
       My Commission Expires: 2/17/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
REED CONSTRUCTION DATA INC.,                      :
                                                  :
               Plaintiff,                         :
                                                  :       Case No. 09-cv-8578 (JPO)
        v.                                        :
                                                  :
THE MCGRAW-HILL COMPANIES, INC.,                  :
                                                  :
               Defendant.                         :
--------------------------------------------------------X

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the within and foregoing *PLAINTIFF REED CONSTRUCTION DATA INC.'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT THE MCGRAW-HILL COMPANIES, INC.'S FIRST SET OF INTERROGATORIES* upon the opposing party via Federal Express addressed as follows:

Saul B. Shapiro
Michelle Waller Cohen
Joshua Aaron Goldberg
James Luke Kerwin
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

This 1st day of March, 2013.

WILLIAM N. WITHROW, JR.

TROUTMAN SANDERS LLP
600 Peachtree Street, N.E.
Suite 5200, Bank of America Plaza
Atlanta, GA 30308-2216
(404) 885-3000 (voice)
(404) 885-3996 (facsimile)

Active 20300664v4 236436.000001

# EXHIBITS 147-152

# Filed Under Seal

# EXHIBIT 153



SIGN IN


*Search McGraw Hill Construction*

**Home     Your Field     Our Products     Our Services     Our Capabilities     About Us**

Put Dodge to work for you. Call **877.903.1907** or click here

## Dodge Global Network

Only Dodge offers national reporting coverage from regionally based reporters so you don't miss important construction projects. The Dodge Global Network delivers a customized solution with early-design, hard-to-find private construction projects. The Network enables you to prioritize your sales pipeline, increase your win/loss ratio, and target the right relationships. Productivity tools help you manage your sales force and streamline your entire sales process.
Click here for a free demo.



### Dodge Products

Dodge BidPro™

Dodge Global Network

Dodge International

Dodge MarketShare™

Dodge SpecShare®

Dodge BuildShare®

Dodge Market Research and Intelligence

Network Express

Dodge Lead Center

Dodge DocuPro™

Dodge Reports in Print

### Customer Access

Dodge Network

McGraw Hill Construction

### More Services

List your Project in Dodge

Update Bidders

Order Hard Copy

The Editorial Center

Client Success Story

Advertise

## The Network Delivers

### Prioritize Your Sales Pipeline



Identify early-stage design projects, the people involved, and their connections. Easily manage multiple tracking folders to organize your sales efforts.

### Increase Your Win/Loss Ratio



Easily sort, manage, and distribute your sales leads to focus on the right projects, in the right markets, at the right time.

### Target the Right Relationships



Know the most active owners, architects, and engineers working on your targeted projects. See their projects and make connections for current and future work.

Connect to Dodge SpecShare®          Read More >

Connect to Dodge BuildShare®          Read More >

Connect to Network Express          Read More >

Connect to DocuPro™ with the Network          Read More >

**Request a Free Network Demo**
call 877.903.1904 or  **Click Here >**

## The Dodge Advantage

National construction reporting advantage with local market presence to cover private work, so you don't miss any relevant projects.

- Local, long-term reporting relationships with active owners
- Sole provider of project news to U.S. Census Bureau
- Robust reporting with key project details
- Reporters in every major U.S. market
- Over 5,000 daily project updates reported

## Soprema Empowers Its Salesforce With Dodge

Call 877.903.1904 for a FREE demo



## Customer Testimonial

*"It's not hard to justify the value that Dodge supplies....The salespeople who use Dodge get into more specifications than the ones who don't."*

**-- Denise Kahl
National Technical Administrator
Soprema**

Read more from our clients >>



**OUR SITES**
archrecord.com
enr.com
greensourcemag.com
sweets.com
dodgeprojects.construction.com

**OUR PRODUCTS**
Dodge
Dodge BidPro™
Dodge Global Network
Dodge International
Dodge DocuPro™
Dodge Reports Print

**Dodge Business Intelligence**
Dodge SpecShare®
Dodge MarketShare™
Dodge BuildShare®
Dodge Market Research & Intelligence

**Sweets®**

**SNAP**

**Architectural Record**
Advertise
Subscribe
Archrecord.com
Continuing Education

**Engineering News-Record**
Advertise
Subscribe
ENR.com
ENR New York
ENR Midwest
ENR Texas & Louisiana
ENR California
ENR Southeast
ENR Southwest
ENR Mountain States
ENR Industry Jobs

**GreenSource**
Advertise
Subscribe

**Video Library**

**McGraw Hill Construction Events**

**OUR SERVICES**
Find a Project/Job
Find Building Products
Find an Event
Earn Continuing Education Credits
Find Market Research

**ABOUT US**
About McGraw Hill Construction
Executive Profiles
Press Room
Contact Us
Awards
About McGraw Hill

**OTHER RESOURCES**
Advertise
Website Support
Site Map
Terms of Use
Privacy and Cookie Notice
Resource Center
McGraw Hill Careers

**SUBSCRIBE**
Newsletters
Magazines

**CONNECT WITH US**
Twitter
Linkedin
Google+
Facebook
YouTube
RSS

© 2013 McGraw Hill Financial. All Rights Reserved

# EXHIBITS 154-162

# Filed Under Seal

# EXHIBIT 163

 

Home    Your Field    Our Products    Our Services    Our Capabilities    About Us

Dodge helps contractors find construction projects. **Call 877.903.1907** or click here



Increase Win/Loss Ratios

See which projects offer the most potential for winning business based on project type, the people involved, project stage, location, valuation, scope of work, and current bid specs.

Learn More

Dodge
Prioritize Prospects
Increase Win/Loss Ratios
Target & Build Relationships
Size Market Opportunities
Improve Sales Manag...
Strengthen Market Position

## Dodge Products

Dodge BidPro™
Dodge Global Network
Dodge International
Dodge MarketShare™
Dodge BuildShare®
Dodge SpecShare®
Dodge Market Research and Intelligence
Network Express
Dodge DocuPro™

## Customer Access

Dodge BidPro™
Dodge BuildShare™
Dodge Market Research
Dodge Network
Dodge DocuPro™
Dodge SpecShare®
McGraw Hill Construction

# What's your job?

 
Contractor    Manufacturer    Architect

## Build Your Business With Dodge Reports

Looking for local construction projects to bid?  Get Dodge Reports and more at the Dodge Lead Center

Do you need trade-targeted bidding projects delivered to you? Get the *right* projects – plus a NEW MOBILE APP that delivers project alerts, key contact details, and the ability to map, track, search and share projects – on the go. Learn about Dodge BidPro™

Do you need to strengthen your market position by finding projects in early design construction stages and get access to more private jobs? Get the customized experience you need to build your business with Dodge Network

Do you need a document management solution that enables you to take control of the thousands of documents generated from the design & development phase to project close-out? Learn about Dodge DocuPro™

## Strengthen your market position with Dodge MarketShare™, Dodge BuildShare® and Dodge SpecShare®

Understand and define your market opportunity with Dodge MarketShare™. Increase product specification with Dodge SpecShare® and know the relationships you need to build with Dodge BuildShare®.

**Talk to a Dodge Expert Today and find out how we can help grow your business call 877.903.1907 or** Click Here >

## Testimonials and Success Stories

Follow @DodgeProjects    3,113 followers

**Call 877.903.1907 & Start Bidding.**

Got 2 minutes? See how Dodge BidPro™ will save you time so you can focus on your most promising leads.



## Find Bidding Projects Now

Get Dodge Reports, Plans and Specs in your area:

Select a State (Required)

All Project Types

Client Success Story

Advertise

MHC Project Bids & Legal Notices

Read more from our clients...

Sole provider of project news to U.S. Census Bureau

Over 5,000 daily project updates reported

## Dodge Monthly Outlook

### June Construction Settles Back One Percent

*NEW YORK – July 22, 2013*

New construction starts in June receded 1% to a seasonally adjusted annual rate of $489.5 billion, according to McGraw Hill Construction, a division of McGraw Hill Financial. Nonresidential building lost momentum in June after strengthening during the previous two months, and housing experienced a pause from its recent upward trend. More

📞 **Learn More About Dodge, Call: 877.903.1907**

  

**OUR SITES**
archrecord.com
enr.com
greensourcemag.com
sweets.com
dodgeprojects.construction.com

**OUR PRODUCTS**
Dodge
Dodge BidPro™
Dodge Global Network
Dodge International
Dodge DocuPro™
Dodge Reports Print

**Dodge Business Intelligence**
Dodge SpecShare®
Dodge MarketShare™
Dodge BuildShare®
Dodge Market Research & Intelligence

**Sweets®**
SNAP

**Architectural Record**
Advertise
Subscribe
Archrecord.com
Continuing Education

**Engineering News-Record**
Advertise
Subscribe
ENR.com
ENR New York
ENR Midwest
ENR Texas & Louisiana
ENR California
ENR Southeast
ENR Southwest
ENR Mountain States
ENR Industry Jobs

**GreenSource**
Advertise
Subscribe

Video Library

McGraw Hill Construction Events

**OUR SERVICES**
Find a Project/Job
Find Building Products
Find an Event
Earn Continuing Education Credits
Find Market Research

**ABOUT US**
About McGraw Hill Construction
Executive Profiles
Press Room
Contact Us
Awards
About McGraw Hill

**OTHER RESOURCES**
Advertise
Website Support
Site Map
Terms of Use
Privacy and Cookie Notice
Resource Center
McGraw Hill Careers

**SUBSCRIBE**
Newsletters
Magazines

**CONNECT WITH US**
Twitter
LinkedIn
Google+
Facebook
YouTube
RSS

© 2013 McGraw Hill Financial. All Rights Reserved