**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REED CONSTRUCTION DATA, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-cv-8578 (JPO) |
| ) | |
| THE MCGRAW-HILL COMPANIES, INC.; ) | **REDACTED** |
| JOHN DOES One through Five; and ) | |
| JOHN DOES ENTITIES One through Five ) | |
| ) | |
| Defendants. ) | |
| ) | |

### DECLARATION OF FREDERICK R. WARREN-BOULTON

I, Frederick R. Warren-Boulton, Ph.D., hereby declare and state as follows:

1.      I have personal knowledge and am competent to testify concerning the matters set forth below.  I understand that this declaration is being submitted in response to Defendant McGraw Hill Financial, Inc.'s Motion to Exclude the Testimony of Plaintiff's Damages and Antitrust Liability Expert Under Rule 702.

2.      I am an economist and Principal with MiCRA, an economics consulting and research firm with offices at 1155 Connecticut Avenue, N.W., Washington, D.C.  I received a B.A. degree from Yale University, an M.P.A. from the Woodrow Wilson School of Princeton University, and a Ph.D. in Economics from Princeton University.  From 1972 to 1983 I was an Assistant and then Associate Professor of Economics at Washington University in St. Louis.  From 1983 to 1989, I served as the chief economist for the Antitrust Division of the U.S. Department of Justice ("DOJ"), first as Director of its Economic Policy Office and then as Deputy Assistant Attorney General for Economic Analysis.  Since leaving the government, I have served as a Resident

1

Scholar at the American Enterprise Institute, a Visiting Lecturer of Public and International Affairs at the Woodrow Wilson School at Princeton University, and as a Research Associate Professor of Psychology at the American University. A copy of my curriculum vitae can be found at Appendix A to my expert report on liability issues, which is attached as Exhibit 1 to this Declaration.

3.      As a principal at MiCRA, I have served as an expert witness or consultant on a number of antitrust matters, including as an expert witness for the Federal Trade Commission ("FTC") in *FTC v. Staples and Office Depot*, for the States and the Department of Justice ("DOJ") in *United States v. Microsoft* and, most recently, for the DOJ in *United States v. H&R Block*. I have been asked to calculate damages in many of these cases.

4.      I was retained by counsel for plaintiff Reed Construction Data, Inc. ("Reed" or "RCD") to serve as an expert witness in the above-captioned case. Among other things, I have analyzed: (1) whether national online construction project information ("national online CPI") subscription services in the United States comprise a relevant antitrust market; (2) whether the defendant McGraw-Hill Construction Dodge ("MHC"), a division of Defendant McGraw-Hill Companies, Inc., ("McGraw-Hill") had monopoly power in that market over the relevant period; (3) whether the alleged conduct pursued by Dodge had the anticompetitive effect of creating or maintaining monopoly power in that market; and (4) the effects of MHC's misconduct, including the amount of profits lost by Reed and gained by MHC. In the process of addressing these issues, I prepared both a liability report and a damages report on September 7, 2012 and two supplemental damage reports on April 11, 2013 and July 30, 2013.[1]

5.      In its Motion to Exclude the Testimony of Plaintiff's Damages and Antitrust Liability Expert Under Rule 702 (the "Motion to Exclude"), McGraw-Hill argues that part of the analysis

---

[1] These reports are attached as Exhibits 1-4 to this Declaration.

that I conducted on behalf of Reed is unreliable and should be ruled inadmissible.  I strongly disagree with McGraw-Hill's characterizations of my opinions and with the two criticisms raised in McGraw-Hill's Motion to Exclude.  Section I of this Declaration provides background information relating to my analysis and opinions in this case.  Section II of this Declaration responds to McGraw-Hill's contention that my opinions rely entirely on statistically insignificant results.  Section III of this Declaration addresses McGraw-Hill's argument that it was improper to pool data from national, regional, and local customers in conducting my regression analysis.



# Paragraphs 6 through 34

# Filed Under Seal



35.    Contrary to McGraw-Hill's assertions, this process and methodology is supported in the economic literature.  For example, a 2000 article from *The Review of Economics and Statistics*, appropriately entitled "To Pool or Not to Pool" addresses this very issue and indicates that pooling may be appropriate, even when not recommended by a Chow test, because pooled estimates tend to be more stable and reliable than unpooled estimates and the efficiency gains from pooling more than offset any bias caused by pooling.  As the authors note in the context of deciding whether or not to pool data across states in estimating demand elasticities:

> The heterogeneous [*i.e.*, unpooled] estimators . . . have  the desirable property of allowing for differences between states, bu t the range of . . . estim ates suggests that the individual state estimates are highly unstable and unreliable.  Indeed, the instability of parameter estimates from individual time series has been observe d quite commonly in a variety of de mand studies, providing a m ajor argument for pooling.

and

> The strength of the homogeneous [*i.e.*, pooled] panel estimators as a group is their relative stability.  Thus, as has been widely confirmed in other contexts, there are real gains from pooling, particularly when the time series is relatively short.[41]

Researchers have noted that "the theoretical economics literature fails to provide any clearcut directives to applied researchers in the choice of whether to pool cross-section/time-series data

---

[40] See Supplemental Report, p. 4.

[41] Badi H. Baltagi et al., *To Pool or Not to Pool: Homogeneous Versus Heterogeneous Estimators Applied to Cigarette Demand*, 82 REV. ECON. & STAT. 117, 122-23 (2000) [attached hereto as Exhibit 8].

and the appropriate technique," and they have chosen to pool data where unpooling yields implausible results, even where pooling is not supported by statistical tests such as the Chow test.[42] Researchers also have noted that the Chow test may too frequently reject the null hypothesis that coefficients are the same for pooled and unpooled regressions and that it may be reasonable to accept some bias in order to get more precise and reliable estimates.[43] By contrast, I am unaware of any researcher (other than Dr. Addanki) who has advocated unpooling when the unpooled results make no economic sense (and might introduce bias) and can be explained by the uneven distribution of observations in the data, regardless of the results of a Chow test.

[42] Badi H. Baltagi & James M. Griffin, *Gasoline Demand in the OECD*, 22 EUROPEAN ECON. REV. 117, 117, 131-35 (1983) [attached hereto as Exhibit 9].

[43] See Frank M. Bass & Dick R. Wittink, *Pooling Issues and Methods in Regression Analysis: Some Further Reflections*, 15 J. MARKETING RES. 277 (1978) [attached hereto as Exhibit 10].

# Paragraphs 36 through 39

# Filed Under Seal



## IV.    Conclusion

40.    MHC's arguments about the significance of the "key variables" in my regression analysis and about my decision to pool the data neglect key details and fail to present a compelling case as to the reliability of my empirical analysis.

23

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of January, 2014, in Washington, D.C.

FREDERICK R. WARREN-BOULTON